**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Southern Division)**

| | |
|---|---|
| PETER HANNA<br>20433 Watkins Meadow Drive<br>Germantown, Maryland 20876<br><br>Plaintiff,<br><br>v.<br><br>ASTRAZENECA PHARMACEUTICALS LP<br>1800 Concord Pike<br>Wilmington, DE 19850<br><br>Serve: The Corporation Trust, Incorporated<br>2405 York Road, Suite 201<br>Lutherville Timonium, Maryland 21093<br><br>Defendant. | Civil Action No. ____________ |

## COMPLAINT

COMES NOW THE PLAINTIFF, PETER HANNA, by counsel, and moves this Court for entry of judgment in his favor, and against Defendant ASTRAZENECA PHARMACEUTICALS LP, and in support of such motion alleges and avers as follows:

## NATURE OF ACTION

1. This is a civil action alleging discrimination on the basis of national origin and ancestry, and retaliation for protected activity, brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.; the Civil Rights Act of 1866, 42 U.S.C. § 1981; the Maryland Fair Employment Practices Act, Md. Code Ann., State Gov't § 20-601 et seq.; and Chapter 27 of the Montgomery County Code, as enforceable under Md. Code Ann., State Gov't § 20-1202.

## PARTIES

2. Plaintiff Peter Hanna ("Mr. Hanna" or "Plaintiff") is an adult resident of Germantown, Montgomery County, Maryland, of Egyptian national origin and North African ancestry. At all relevant times Mr. Hanna was employed at Defendant's facility in Gaithersburg, Montgomery County, Maryland.

3. Defendant AstraZeneca Pharmaceuticals LP ("AstraZeneca" or "Defendant") is a Delaware limited partnership with its principal U.S. place of business in Wilmington, Delaware, and substantial operations in Gaithersburg, Maryland. At all relevant times it employed more than five hundred employees and is an "employer" under 42 U.S.C. § 2000e(b), Md. Code Ann., State Gov't § 20-601(d), and Montgomery County Code § 27-6.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(4).

5. This Court has supplemental jurisdiction over Plaintiff's state and county law claims under 28 U.S.C. § 1367(a), as those claims arise from the same case or controversy.

6. Venue is proper under 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3). The unlawful practices alleged were committed in this District at AstraZeneca's facility in Gaithersburg, Maryland, where Mr. Hanna was employed, and the relevant employment records are maintained here.

7. Assignment to the Southern Division is proper under Local Rule 501.4(b).

## PROCEDURAL STATUS

8. On June 5, 2025, eighty-three days after his termination, Mr. Hanna filed a complaint of discrimination with the Montgomery County Office of Human Rights, a local

human relations commission and Fair Employment Practices Agency operating under a worksharing agreement with the Equal Employment Opportunity Commission.

9. On December 22, 2025, Mr. Hanna filed a charge with the Commission, docketed as Charge No. 531-2026-01228 and dual-filed with the Maryland Commission on Civil Rights. That filing occurred within the 300-day period prescribed by 42 U.S.C. § 2000e-5(e)(1), which governs because Maryland is a deferral jurisdiction.

10. Defendant submitted a Position Statement through counsel on or about April 20, 2026. Mr. Hanna submitted a rebuttal on or about May 20, 2026.

11. The Commission issued a Dismissal and Notice of Rights on July 22, 2026. This Complaint is filed within ninety days of Mr. Hanna's receipt of that notice.

12. Mr. Hanna's claims under 42 U.S.C. § 1981 are subject to a four-year limitations period and carry no exhaustion requirement.

13. All conditions precedent have been satisfied.

## BACKGROUND

14. Mr. Hanna is of Egyptian national origin and North African ancestry. He worked at AstraZeneca for seven years, from March 15, 2018 until his termination on March 14, 2025, rising to Senior Manager on the Commercial Excellence team within AstraZeneca's U.S. Commercial Oncology business unit in Gaithersburg, Maryland.

15. In seven years, Mr. Hanna was never issued a written warning, placed on a performance improvement plan, given a corrective action, or disciplined in any form.

**Mr. Agrawal's Allocation of Opportunity Along Lines of National Origin**

16. Mr. Hanna reported to Mayank Agrawal, who is of Indian national origin and ancestry.

17. Mr. Agrawal reported to Jake Vineberg, Director. Above Mr. Vineberg was Mr. Manrao, Vice President of U.S. Oncology, who is of Indian national origin and ancestry.

18. Mr. Agrawal had previously reported through Mr. Manrao's line and maintained direct personal access to Mr. Manrao throughout the relevant period, independent of the formal reporting structure.

19. Preeti Sood, who is of Indian national origin and ancestry, held a position in Global Commercial Operations interfacing with Mr. Hanna's team.

20. Mr. Agrawal conferred upon Ms. Sood benefits and responsibilities she had not previously held, and that were not incident to her role, including the day-to-day tactical management of the launch project management team, which had been Mr. Hanna's responsibility under his role description, annual goals, as well as client and leadership expectations. He also conferred upon Ms. Sood direct visibility and exposure before senior leadership, and discrete responsibilities falling squarely within Mr. Hanna's job description and bearing no relationship to Ms. Sood's own role. In doing so, Mr. Agrawal removed Mr. Hanna from any involvement with the project management team that he trained and managed. Mr. Agrawal took these actions because he favored employees of Indian race.

21. Mr. Agrawal separately redirected the production of launch materials to Ms. Sood. That work fell squarely within Mr. Hanna's role and unrelated to the project management function with which Ms. Sood interacted. Mr. Agrawal did so without notice to Mr. Hanna, going around him to ask a colleague of Mr. Hanna's to help Ms. Sood produce the materials. Mr. Hanna learned of it only when that colleague informed him by email.

22. Ms. Long, Ms. Sood's immediate predecessor in the same position, is not of Indian national origin or ancestry. Ms. Long received none of the benefits, authority, or executive exposure Mr. Agrawal conferred upon Ms. Sood.

23. Ms. Long is a proper comparator. She occupied the identical position, in the same reporting structure, performing the same functions, under the same manager. The sole material distinction between Ms. Long and Ms. Sood is national origin and ancestry. Ms. Sood shares Mr. Agrawal's; Ms. Long does not.

24. Mr. Agrawal further excluded Mr. Hanna from meetings and from information necessary to the performance of his role.

25. The cumulative effect of Mr. Agrawal's reallocation of Mr. Hanna's duties and his exclusion of Mr. Hanna from the functions of his position was to render Mr. Hanna unable to perform his job adequately, a condition Mr. Agrawal created and thereafter relied upon as a basis for Mr. Hanna's removal.

**Mr. Hanna's Attempt to Escalate, and AstraZeneca's Closure of the Open-Door Channel**

26. In October 2024, Mr. Hanna sought to raise Mr. Agrawal's conduct with Mohit Manrao ("Mr. Manrao"), Vice President of U.S. Oncology, under AstraZeneca's written open-door policy. Mr. Vineberg instructed Mr. Hanna not to contact Mr. Manrao and directed him into the Human Resources complaint process instead.

27. Mr. Agrawal retained direct personal access to Mr. Manrao throughout. AstraZeneca thus foreclosed to Mr. Hanna the escalation channel that remained open to the subject of Mr. Hanna's complaint.

28. The resulting structure, in which the subject of a complaint could reach the senior executive freely while the complainant could not, is probative of the environment in which Mr.

Agrawal and Ms. Sood acted, and of their reasonable expectation that senior review would not disturb them.

**Mr. Hanna's Protected Activity and His Requests for Reassignment**

29. Mr. Hanna initiated his internal complaint against Mr. Agrawal with Human Resources in October 2024, as Mr. Vineberg had directed.

30. From October 2024 forward, Mr. Hanna repeatedly requested, both verbally and in writing, that he be reassigned to a different manager so that he could continue to perform his duties without the treatment he was experiencing. Mr. Hanna did not request that any individual be disciplined. He requested only a change in reporting line.

31. On December 12, 2024, Mr. Hanna submitted the completed complaint, with supporting documentation, to Kristen Jodts ("Ms. Jodts") of Human Resources. The completed complaint renewed, in writing, Mr. Hanna's request for reassignment.

32. Mr. Hanna's complaint quoted AstraZeneca's Code of Ethics, which requires that all persons be treated with fairness, integrity, honesty, courtesy, consideration and respect regardless of age, disability, ethnicity, gender identity, nationality, pregnancy, race, religion, or sex, and alleged that Mr. Agrawal had acted in direct violation of that standard.

33. Under a heading addressing conflicts of interest, Mr. Hanna's complaint stated that he did not understand the nature of the relationship between Mr. Agrawal and Ms. Sood, that it presented a clear conflict of interest (which was clearly inferring preference based on race and national origin), that it had compromised the quality of the team's work, and that it had cost the business money.

34. Mr. Hanna's complaint thus opposed conduct he reasonably and in good faith believed unlawful, invoking AstraZeneca's own antidiscrimination standard and identifying the relationship through which the disparate treatment operated. It constituted protected activity.

35. AstraZeneca never responded to Mr. Hanna's request for reassignment and never acted on it. The request was available at minimal cost within a business unit containing multiple managers, and it would have resolved the conditions of which Mr. Hanna complained without any finding against Mr. Agrawal. AstraZeneca's refusal to consider it is probative of its failure to exercise reasonable care to correct the conduct reported.

**AstraZeneca Failed to Conduct a Meaningful Investigation, and Mr. Agrawal Knew of the Investigation**

36. Mr. Hanna’s complaint remained open from October 2024 until early February 2025.

37. Throughout that period, Mr. Agrawal knew that he was the subject of a pending Human Resources complaint by his direct report, and Ms. Sood knew that she was the individual it identified.

38. AstraZeneca conducted no meaningful investigation. On or about early February 2025, Employee Relations notified Mr. Hanna by email that his complaint had been closed as unsubstantiated. The notice identified no witness interviewed, no document reviewed, and no investigative step taken.

39. When Mr. Hanna informed Ms. Jodts that he was experiencing retaliation for having complained, Ms. Jodts responded: "I have no advice for you." Mr. Hanna recited this statement in his charge of discrimination, filed with the Commission months before this action.

40. Each of the following would dissuade a reasonable worker from making or supporting a charge of discrimination: the instruction barring Mr. Hanna from the open-door

channel; the refusal to consider or respond to his request for reassignment; the summary closure of his complaint without investigation; and Human Resources' express refusal to address his report of retaliation.

**The Financial Irregularity, Ms. Sood's Obstruction, and Mr. Hanna's Investigation**

41. In or about late 2024, a client complained of a financial irregularity of approximately $75,000 associated with Ms. Sood.

42. Before any investigation, and in response to that complaint, Mr. Agrawal dismissed the matter, stating in substance that "Enhertu has plenty of money." Mr. Agrawal was protecting Ms. Sood because she is Indian.

43. On or about December 16, 2024, four days after Mr. Hanna submitted his completed complaint against Mr. Agrawal, Director Vineberg directed Mr. Hanna to investigate.

44. Ms. Sood obstructed Mr. Hanna’s investigation. She declined Mr. Hanna's meeting requests, refused to answer his questions regarding the charge, and asserted that Mr. Hanna's leadership already possessed the information he sought. Mr. Agrawal likewise declined to respond to Mr. Hanna's inquiries.

45. Unable to obtain the information from Ms. Sood or Mr. Agrawal, Mr. Hanna on his own initiative, approached AstraZeneca's Finance function and obtained the underlying records directly.

46. Through those records, Mr. Hanna identified the irregularity. He reported his findings to Mr. Vineberg, the Director who had directed the investigation.

47. Only after Mr. Hanna had documented the irregularity did Ms. Sood offer an explanation. She offered two that could not both be true: first that the charge represented overtime, and subsequently that it was an accounting error.

48. The inquiry required completion before year-end budget close and was substantially complete in late December 2024, reaching final resolution in early February 2025.

49. No refund or correction was made until after the client escalated the matter. AstraZeneca's contemporaneous records establish that no correction or refund occurred until after client escalation, that Mr. Agrawal affirmatively discouraged inquiry before any investigation began, and that Ms. Sood obstructed the inquiry once it was underway.

**AstraZeneca's Response to the Confirmed Irregularity**

50. In or about January 2025, following confirmation of the irregularity and the return of the funds, and while Mr. Hanna's complaint against Mr. Agrawal remained pending, Mr. Agrawal did not subject Ms. Sood to increased scrutiny because of her Indian race and national origin.

51. Mr. Agrawal instead met separately with Mr. Vineberg and with the director of Finance, without Mr. Hanna's participation, to arrange the consolidation of the team under Ms. Sood. Mr. Hanna observed these meetings at the time. Mr. Agrawal then presented the consolidation to Mr. Manrao as a completed proposal.

52. Ms. Sood emerged with expanded authority, reduced oversight, and additional team members under her supervision, weeks after a confirmed financial irregularity in which she had obstructed the inquiry and offered two inconsistent explanations.

53. An alternate team was available to assume those responsibilities. That team had performed its functions without incident and was not implicated in the irregularity. It was not led by an individual of Mr. Agrawal's race and national origin, and it was not selected.

54. Mr. Agrawal's allocation of expanded authority and diminished supervision to the individual at the center of a confirmed financial irregularity, arranged through separate meetings

without Mr. Hanna's participation and presented to a senior executive to whom Mr. Agrawal enjoyed personal access, in preference to an unimplicated team not led by a person of his own race and national origin, is unsupported by any apparent legitimate business rationale and is probative of intentional discrimination on the basis of national origin and ancestry.

**The Retaliatory Charges and Termination**

55. Mr. Hanna's financial investigation reached final resolution in early February 2025. AstraZeneca closed Mr. Hanna’s four-month complaint of discrimination against Mr. Agrawal in or about the same period.

56. On February 19, 2025, two weeks after both events, Mr. Agrawal filed charges of misconduct against Mr. Hanna with Employee Relations (the "Retaliatory Charges").

57. Mr. Agrawal was the subject of Mr. Hanna's internal complaint, which had been pending against him for four months. Ms. Sood, who served as Mr. Agrawal's corroborating witness, was the individual whose conduct Mr. Hanna's complaint had identified, whose financial irregularity Mr. Hanna had investigated, and who had obstructed that investigation.

58. Mr. Agrawal did not file the Retaliatory Charges while Mr. Hanna's complaint against him was pending. He filed them two weeks after that complaint was closed. The sequence is consistent with a decision to wait until Mr. Hanna's complaint was disposed of before moving against him.

59. AstraZeneca's treatment of the two complaints was categorically different. Mr. Hanna's complaint against his manager was closed as unsubstantiated with no evident investigation after four months. Mr. Agrawal's Retaliatory Charges against Mr. Hanna produced a full Employee Relations investigation, written allegations furnished to Mr. Hanna, a formal

response meeting on March 4, 2025, and a determination of policy violation, all within twenty-three days.

60. AstraZeneca did not treat the fact that the two individuals supplying the case against Mr. Hanna were the two individuals Mr. Hanna had complained about as a reason for caution.

61. The allegations in the Retaliatory Charges were false. Among them was the assertion, attributed to Ms. Sood, that Mr. Hanna had interfered with her job duties by intentionally excluding her from meetings. No such meetings existed. Mr. Hanna so stated during his March 4 response meeting, and AstraZeneca's own calendar records establish it.

62. By letter dated on or about March 14, 2025, AstraZeneca terminated Mr. Hanna's employment. The letter states that Mr. Hanna attended a March 4 meeting with Employee Relations at which he was given an opportunity to respond to allegations of bullying and harassment; that the investigation found evidence supporting violation of the Global Standard on Bullying and Harassment; that Mr. Hanna’s behaviors and actions were not in alignment with AstraZeneca's policies; and that his position as Senior Manager was terminated effective March 14, 2025.

63. AstraZeneca's stated reason is false and pretextual. AstraZeneca paid Mr. Hanna the largest bonus of his seven-year tenure in or about March 2025, after the Retaliatory Charges, after the Employee Relations investigation, after the March 4 response meeting, and days before termination. AstraZeneca's contemporaneous conduct is irreconcilable with its stated belief that Mr. Hanna had violated its harassment standard.

64. During that same year Mr. Hanna received two Oncology Business Unit award nominations.

65. As a direct and proximate result, Mr. Hanna has suffered lost wages, lost bonus, lost equity compensation, lost benefits, diminished earning capacity, emotional distress, humiliation, and reputational harm within the pharmaceutical commercial sector. Mr. Hanna has not been employed since March 14, 2025.

**COUNT ONE**
**DISCRIMINATION ON THE BASIS OF NATIONAL ORIGIN**
**IN VIOLATION OF TITLE VII**
**(against AstraZeneca)**

66. The foregoing allegations are incorporated as if realleged herein.

67. Mr. Hanna is a member of a protected class by reason of his Egyptian national origin.

68. Mr. Hanna performed at a level meeting or exceeding AstraZeneca's legitimate expectations, as evidenced by a record bonus, two award nominations, and seven years without discipline.

69. Mr. Hanna suffered adverse employment actions including the removal of his core responsibilities, exclusion from meetings and information, and discharge.

70. Ms. Sood, who shares Mr. Agrawal's race and national origin, received materially more favorable treatment, including expanded authority following a confirmed financial irregularity. Ms. Long, who does not share that national origin, did not.

71. AstraZeneca's stated reason for discharge is pretextual.

72. AstraZeneca acted with malice or reckless indifference to Plaintiff's federally protected rights.

73. As a direct and proximate result of AstraZeneca’s actions, Mr. Hanna has suffered and continues to suffer injury, including loss of income, loss of employee benefits, lost career

and business opportunities, embarrassment, humiliation, emotional distress, inconvenience, time, frustration, and other pecuniary damages.

74. Due to the conscious disregard for Mr. Hanna's federally protected rights, and the severity of AstraZeneca's conduct, Mr. Hanna is also entitled to punitive damages.

**COUNT TWO**
**RETALIATION IN VIOLATION OF TITLE VII**
**(against AstraZeneca)**

75. The foregoing allegations are incorporated as if realleged herein.

76. Mr. Hanna engaged in protected activity beginning in October 2024, when he initiated an internal complaint against Mr. Agrawal at Mr. Vineberg's direction, and continuing through his submission of the completed complaint on December 12, 2024, which invoked AstraZeneca's antidiscrimination standard and opposed conduct he reasonably believed unlawful.

77. AstraZeneca knew of that activity. The complaint was filed with AstraZeneca's Human Resources function, concerned Mr. Hanna's direct manager, and remained pending for four months.

78. AstraZeneca thereafter subjected Mr. Hanna to materially adverse actions, including the refusal to consider his request for reassignment, the summary closure of his complaint without investigation, the refusal of Human Resources to address his report of retaliation, the acceptance and prosecution of the Retaliatory Charges filed by the subject of his complaint, and his discharge.

79. Causation is established by the sequence of events: Mr. Hanna's complaint against Mr. Agrawal was pending from October 2024 to early February 2025; AstraZeneca closed it without investigation; two weeks later Mr. Agrawal filed the Retaliatory Charges with Ms. Sood as corroborating witness; and Mr. Hanna was discharged twenty-three days after that.

Causation is further established by Mr. Agrawal's expansion of Ms. Sood's authority while Mr. Hanna's complaint against him was pending, by AstraZeneca's disparate handling of the two complaints, and by the absence of any contemporaneous performance concern.

80. As a direct and proximate result of AstraZeneca's actions, Mr. Hanna has suffered and continues to suffer injury, including loss of income, loss of employee benefits, lost career and business opportunities, embarrassment, humiliation, emotional distress, inconvenience, time, frustration, and other pecuniary damages.

81. Due to the conscious disregard for Mr. Hanna's federally protected rights, and the severity of AstraZeneca's conduct, Mr. Hanna is also entitled to punitive damages.

**COUNT THREE**
**DISCRIMINATION ON THE BASIS OF ANCESTRY AND ETHNICITY IN VIOLATION OF 42 U.S.C. § 1981**
**(against AstraZeneca)**

82. The foregoing allegations are incorporated as if realleged herein.

83. Section 1981 guarantees all persons the same right to make and enforce contracts, including the making, performance, modification, and termination of employment and the enjoyment of all its benefits, terms, and conditions. 42 U.S.C. § 1981(b).

84. Section 1981 reaches discrimination on the basis of ancestry and ethnic characteristics. Mr. Hanna, of North African ancestry, is within its protection.

85. AstraZeneca, acting through Mr. Agrawal, intentionally discriminated against Mr. Hanna on the basis of ancestry by conferring responsibility, authority, and executive exposure upon an individual of Mr. Agrawal's own ancestry while stripping the same from Mr. Hanna; by withholding from Ms. Long, who does not share that ancestry, what was given to Ms. Sood; and

by consolidating the team under Ms. Sood following a confirmed financial irregularity, in preference to an unimplicated team not led by a person of Mr. Agrawal's ancestry.

86. But for Mr. Hanna's ancestry, he would not have suffered these actions.

87. As a direct and proximate result of AstraZeneca's actions, Mr. Hanna has suffered and continues to suffer injury, including loss of income, loss of employee benefits, lost career and business opportunities, embarrassment, humiliation, emotional distress, inconvenience, time, frustration, and other pecuniary damages.

88. Due to the conscious disregard for Mr. Hanna's federally protected rights, and the severity of AstraZeneca's conduct, Mr. Hanna is also entitled to punitive damages.

**COUNT FOUR**
**RETALIATION IN VIOLATION OF 42 U.S.C. § 1981**
**(against AstraZeneca)**

89. The foregoing allegations are incorporated as if realleged herein.

90. Section 1981 encompasses retaliation for opposing ancestry-based discrimination.

91. Mr. Hanna opposed conduct he reasonably and in good faith believed to violate § 1981, beginning in October 2024 and continuing through the closure of his complaint in early February 2025.

92. AstraZeneca retaliated by the actions alleged. Two weeks after closing Mr. Hanna's complaint, AstraZeneca received and acted upon the Retaliatory Charges filed by the subject of that complaint and corroborated by the individual it had identified, and discharged Mr. Hanna twenty-three days later.

93. As a direct and proximate result of AstraZeneca's actions, Mr. Hanna has suffered and continues to suffer injury, including loss of income, loss of employee benefits, lost career

and business opportunities, embarrassment, humiliation, emotional distress, inconvenience, time, frustration, and other pecuniary damages.

94. Due to the conscious disregard for Mr. Hanna's federally protected rights, and the severity of AstraZeneca's conduct, Mr. Hanna is also entitled to punitive damages.

95. AstraZeneca's conduct was willful and undertaken with reckless indifference to Mr. Hanna's rights, warranting punitive damages not subject to statutory cap.

**COUNT FIVE**
**VIOLATION OF THE MARYLAND FAIR EMPLOYMENT PRACTICES ACT**
**(against AstraZeneca)**

96. The foregoing allegations are incorporated as if realleged herein.

97. AstraZeneca is an employer under Md. Code Ann., State Gov't § 20-601(d).

98. Section 20-606(a) prohibits discrimination in the terms, conditions, or privileges of employment, and discharge, on the basis of national origin. Section 20-606(f) prohibits retaliation against an employee who opposes a prohibited practice.

99. Mr. Hanna is a member of a protected class by reason of his Egyptian national origin.

100. Mr. Hanna performed at a level meeting or exceeding AstraZeneca's legitimate expectations, as evidenced by a record bonus, two award nominations, and seven years without discipline.

101. Mr. Hanna suffered adverse employment actions including the removal of his core responsibilities, exclusion from meetings and information, and discharge.

102. Ms. Sood, who shares Mr. Agrawal's race and national origin, received materially more favorable treatment, including expanded authority following a confirmed financial irregularity. Ms. Long, who does not share that national origin, did not.

103. AstraZeneca's stated reason for discharge is pretextual.

104. Due to the conscious disregard for Mr. Hanna's protected rights, and the severity of AstraZeneca's conduct, Mr. Hanna is also entitled to punitive damages.

**COUNT SIX**
**DISCRIMINATION, RETALIATION, AND HARASSMENT IN VIOLATION OF MONTGOMERY COUNTY CODE, CHAPTER 27**
**(against AstraZeneca)**

105. The foregoing allegations are incorporated as if realleged herein.

106. Section 20-1202 of the State Government Article authorizes a person subjected to a discriminatory act prohibited by the Montgomery County Code to bring a civil action for damages, injunctive relief, or other civil relief.

107. At all relevant times, Mr. Hanna was employed at AstraZeneca's facility in Gaithersburg, Montgomery County, Maryland. AstraZeneca is an "employer" within the meaning of Montgomery County Code § 27-6, which includes any person who employs one or more individuals in the County.

108. Montgomery County Code § 27-19 prohibits an employer from discharging an individual, or discriminating against an individual in the terms, conditions, or privileges of employment, because of national origin; prohibits retaliation against an individual for opposing a discriminatory practice; and prohibits discriminatory harassment.

109. Under § 27-19 as amended effective January 15, 2021, harassment based on a protected characteristic is actionable where a reasonable person in the employee's position would consider the conduct more than a petty slight, trivial inconvenience, or minor annoyance. The conduct need not be severe or pervasive.

110. AstraZeneca discharged Mr. Hanna and discriminated against him in the terms and conditions of his employment because of national origin, as alleged.

111. AstraZeneca retaliated against Mr. Hanna for his opposition to discriminatory practices, including through the Retaliatory Charges and his discharge, as alleged.

112. Mr. Hanna was subjected to harassment based on national origin, consisting of the removal of his job responsibilities and their reassignment to individuals of his manager's national origin; his exclusion from meetings and information necessary to his role; hostile treatment by his manager; the refusal of his repeated requests for reassignment; and the Retaliatory Charges. A reasonable person in Mr. Hanna's position would consider that conduct more than a petty slight, trivial inconvenience, or minor annoyance.

113. Under § 20-1202(d), Mr. Hanna is entitled to recover reasonable attorney's fees, expert witness fees, and costs.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff PETER HANNA requests that this Court enter judgment in his favor and against Defendant ASTRAZENECA PHARMACEUTICALS LP on the above Counts as follows:

a. Declare that Defendant's conduct violated Title VII, 42 U.S.C. § 1981, the Maryland Fair Employment Practices Act, and the Montgomery County Code;

b. Award back pay including lost salary, bonus, equity compensation, and benefits, with prejudgment interest;

c. Award front pay in lieu of reinstatement, or in the alternative order reinstatement;

d. Award compensatory damages for emotional distress, humiliation, and reputational harm;

e. Award punitive damages under 42 U.S.C. § 1981, uncapped as to those Counts;

f. Award attorneys' fees, expert fees, and costs under 42 U.S.C. § 1988, 42 U.S.C. § 2000e-5(k), Md. Code Ann., State Gov't § 20-1015, and Md. Code Ann., State Gov't § 20-1202(d);

g. Order expungement of adverse references from Plaintiff's personnel file and adoption of a neutral reference protocol;

h. Grant such other relief as the Court deems just.

**JURY DEMAND**

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL COUNTS ABOVE.**

October 5, 2026

Respectfully submitted,

Adam S. Nadelhaft
MD District Court Bar No. N1031119
CHARLSON BREDEHOFT
COHEN BROWN & NADELHAFT, P.C.
11260 Roger Bacon Drive, Suite 201
Reston, Virginia 20190
(703) 318-6800 Telephone
(703) 318-6808 Facsimile

*Counsel for Plaintiff,*
*Peter Hanna*